MICHAEL HURLEY, PROSECUTOR, v. THE INHABITANTS OF THE CITY OF TRENTON AND THE BARBER ASPHALT COMPANY, DEFENDANTS.

Submitted April 1, 1901—Decided June 24, 1901.

1. It must be taken to be settled in this court that a contract by a municipality to incur an obligation or indebtedness in excess of existing appropriations for the purpose for which the contract is made is illegal.
2. The right to "repave" is not embraced within the authority in a city charter to "repair" streets.
3. The act of May 13th, 1884 (*Pamph. L.*, p. 341), authorizing cities to repave streets, expressly limits such improvements to such as shall be made "at the general expense." To authorize a municipality to do work under that statute it must appear that an appropriation existed, raised or authorized to be raised, for the improvement of streets within the power conferred by the act.
4. Under the act approved March 2d, 1898 (*Pamph. L.*, p. 43), which is relied upon in this case, the proceeds of the bonds, which are authorized to be issued to raise a fund, from which the cost and expenses of the repaving must be paid, must be in hand before the council can "decide to repave out of said fund."
5. The contract brought up cannot be sustained under the city charter of Trenton, or any general statute relating to repaving of streets, and is therefore void.

On *certiorari.*

Before Justices GUMMERE and FORT.

For the prosecutor, *James J. Cahill* and *John H. Backes.*

For the defendants, *George W. Macpherson* and *John Rellstab.*

The opinion of the court was delivered by

FORT, J.   The prosecutor, a resident and taxpayer of the city of Trenton, seeks, by this writ, to set aside a certain contract of the city council of the city of Trenton, awarded to the Barber Asphalt Paving Company, to repave Bank and East Hanover streets, in said city.

The first reason assigned is that no fund exists out of which to pay the costs and expenses incurred by the contract.

The following agreed fact appears in the record:

"It is further admitted by the counsel for the defendants that, at the time of the making of the contract mentioned in the writ of *certiorari* in this cause, no bonds had been issued to meet the expenses of the improvement contemplated by the contract, and that no money is on hand or available now to meet the expenses incurred, or to be incurred, in the making of the improvement."

The brief of the counsel of the defendants contains this admission:

"It is admitted that there is no money on hand or available, and that no bonds have been issued, to meet the expense of such authorized improvement."

It is unnecessary to amplify on this branch of the case, because if there be no authority for this repaving, which will permit it to be done before the fund is in hand, from, or authorized by, taxation, the contract is void.

It must be taken to be settled in this court that a contract to incur an obligation or indebtedness in excess of existing appropriations for the purposes for which the contract is made is illegal. *Atlantic City Water Co.* v. *Read,* 21 *Vroom* 665; *Humphreys* v. *Bayonne,* 26 *Id.* 241.

It is likewise conceded that the city charter of Trenton contains no authority to repave a street, either by assessing the cost upon property owners or at the general public expense, unless the provisions thereof which authorize the repairing of said streets will permit the repaving thereof.

It is a cardinal rule of construction of municipal charters that the powers conferred are to be strictly construed, and where doubtful held not to exist. 1 *Dill. Mun. Corp.,* §§ 89, 91; *Ottawa* v. *Carey,* 108 *U. S.* 110; *Potts* v. *Cape May. post* p. 544.

The right to "repave" is not embraced within the authority given in a city charter to "repair" streets. The latter must be done at public expense, by moneys raised by taxation, and

contemplates only the keeping of existing pavements or road-ways in order.

Repaving may be assessed upon property owners as original pavings where authority exists. *Jelliff* v. *Newark,* 19 *Vroom* 101.

Is there any statute authorizing the action taken by the council in letting the contract brought up?

Two statutes are found relating to the repaving of streets. One, an act entitled "An act to authorize cities to make permanent improvements in the roadbeds of streets at the general expense," approved May 13th, 1884. *Pamph. L., p.* 341.

This act, by its title, expressly limits the improvements to be made to such as shall be done "at the general expense." The body of the act declares "the expense of such work [that authorized by the act] shall be paid  *  *  *  out of the moneys raised by tax for the improvement of streets," and it further provides that the direction for the improvement shall be by ordinance, "passed in the same manner that other ordinances of such city requiring the expenditure of money are passed."

It is very clear that this statute cannot be relied upon to sustain the contract here under review.

It is true that the repaving for which the contract here sought to be set aside was made was provided for by an ordinance of the city council, passed September 18th, and approved by the mayor, September 20th, 1900. The ordinance states that the repaving is to be with "sheet asphaltum over Belgian block," under the direction of the street commissioner, but no reference is made in it to the statute under which it is claimed to be passed, nor to the fact that the cost is to be "at the general expense."

If authority existed for it, this ordinance would be just as effective for a "repaving" where it was intended to assess property owners therefor as where it was not. The ordinance itself, therefore, is no guide as to what rule of payment for the improvement the council intended should be followed. Nor is it necessary, for the legality of the ordinance, or the contract under it, that it should so recite; but it is requisite,

when the contract made under such an ordinance is attacked for want of power to make it, to show that, at the time the contract was made, there existed an appropriation, raised or authorized to be raised, for the improvement of streets within the power conferred by the act of May 13th, 1884.

The act of 1884 confers no power to raise money, but simply enables the council to use money "raised for the improvement of streets" to pave, repave, macadamize, repair with broken stone or otherwise permanently improve the roadbed of any street or avenue. The money must be raised in the manner provided by law for raising money by taxation for the improvement of streets in the city of Trenton. The provisions of this act will not change the rule as to exceeding the appropriations, as declared in *Atlantic City Water Works* v. *Reed, supra.*

The other act, and the only act, in fact, relied upon by the defendants, is the one approved March 2d, 1898, entitled "An act providing for the repavement of paved streets in cities of this state and for the issuance of bonds in payment therefor." *Pamph. L., p.* 43.

This act authorizes the issuance of bonds to an amount "not exceeding four dollars for each inhabitant," to run for thirty years, at four per centum per annum, to be sold at not less than par.

The third section of the act is as follows:

"3. The proceeds of such bonds, including any premium thereon, shall be used by the board having charge and control of the streets in such city in the payment of the costs and expenses hereafter incurred by such city in the repavement of any paved street or streets therein, which said last-mentioned board shall hereafter decide to so repave out of said fund."

The fourth section is a repealer of all inconsistent legislation.

It will be noted that it is *"the proceeds of such bonds"* which shall be used for the "cost and expenses incurred in repaving of any paved street" which the city council shall "decide to so repave *out of said fund."*

The contention of the prosecutor is, and we think rightly,

that no contract can be made for repaving under this statute until the fund is secured, or at least authorized, for the purpose under the authority of this statute.

Take the case in hand. No authority to issue bonds to pay the cost and expenses of the proposed repaving in this case has been given by the city council. Such authority must be given by ordinance, in the manner provided for the issuance of bonds by the city charter.

Can it be said that because the city council has the right to so authorize, that it will so do, and that because it may so do, there exists a fund out of which such costs and expenses may be paid.

It would hardly be so contended. Suppose the city council in office is a different one from the one authorizing the repaving, and they refuse to issue the bonds to raise the fund. Can they be compelled so to do?

We think that before the council can contract any debt to be paid under the authority of this statute it must possess the proceeds of the bonds issued under it, as a fund out of which the cost and expenses not only may, but, the fund being raised for that specific purpose, must be paid.

It is insisted that it is better for the city that the fund be not raised before the cost and expense is incurred. That question is for the legislature, not for the courts.

It would be difficult to distinguish, upon principle, the provisions of the act of March 2d, 1898, now under consideration, from the act of April 21st, 1876 (*Pamph. L., p.* 366), which was construed by this court to be ineffective to confer upon the common council of the city of Beverly power to incur expenses for supplying the city with water until the money authorized by the act to be raised by loan was actually in hand. *Hornby* v. *Beverly,* 19 *Vroom* 110.

We think that before the council can contract for repaving of streets, the cost and expenses of which must be paid out of a fund from the proceeds of the sale of bonds authorized to be issued by the city under the act approved March 2d, 1898, that the fund must be in hand.

This construction of the act is made the more clear by the

fact that, by its terms, in many cities the board that authorizes the issuance of the bonds is not the board which would make the contracts or expend the money.

By the first section of the act the board having charge and control of the finances of any city is authorized, from time to time, to issue bonds, &c., while by the third section it is provided that "the proceeds of such bonds * * * shall be used by the board having charge and control of the streets in such city in the payment of the cost and expenses * * * in repaving," &c.

In Newark and Jersey City it is quite clear that the board of finance or common council only would have power to issue the bonds, while in both of said cities the boards of street and water commissioners, they being "the board having charge and control of the streets," would make the contracts and expend the money.

It may be that the city council of Trenton possesses the same authority as the two boards in other cities, but the two duties are just as distinct in their execution when one body exercises both as when separate boards do so, and a rule of construction which is general must apply to all, and we are of opinion that the board having charge and control of streets in a city cannot incur any obligations under this act, by contract or otherwise, until the proceeds of the issue of bonds is in hand that the board may "decide to so repave out of said funds."

This conclusion makes it unnecessary to consider the other questions raised in the case. The action of the city council in awarding the contract brought up by the writ is set aside.