HUMACAO LUMBER Co., Plaintiff and Appellee, v. AMERICAN SURETY Co. OF NEW YORK ET AL., Defendants and Appellants.

No. 8241. Argued June 3, 1941.—Decided July 21, 1941.

*Harry F. Besosa* for appellants.   *F. González Fagundo* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

The plaintiff, a partnership constituted under the laws of Puerto Rico and having its principal office in Humacao, brought, in the district court, an action against the American Surety Co. of New York, a surety company authorized to do business in this island, and Mario Fuentes, and Juan Jaime, respectively Mayor and Secretary-Auditor, of the Municipality, which offices they held until January 11, 1937, to recover the sum of $738.41.

Three causes of action were alleged, the substantial ground for the first being that defendant Jaime, who had furnished a $5,000 bond for the faithful performance of his duties issued by the defendant company on July 16, 1936, issued to the plaintiff, with the approval of Mayor Fuentes, credit certificate No. 144 for $362.68 chargeable to the municipal budget for the fiscal year 1936–37, knowing that at the time of its issuance no amount had been appropriated in the budget justifying such issuance, thus defrauding the plaintiff inasmuch as the municipality refuses to pay the certificate on the ground that the same lacks legal validity.

Similar facts are alleged in the second and third causes of action in connection with certificates Nos. 145 and 186 for $197.25 and $178.48, respectively, executed, the former on July 16 and the latter on November 2, 1936.

The defendant company demurred to the complaint for lack of facts sufficient to constitute a good cause of action, and its demurrer was overruled. It then filed an answer denying the allegations of the complaint and alleging, in short, as special defenses, as follows:

(*a*) That although the action prosecuted is entitled "for the recovery of money," actually it is one for damages under Sections 1802 and 1868 of the Civil Code and has prescribed, inasmuch as the orders were issued in 1936 and the complaint was filed in 1938;

(*b*) That the bond was executed by the defendant company "expressly and exclusively in favor of the Municipality of Humacao to secure the faithful performance by Juan Jaime Méndez of the duties of his office as secretary-auditor and that the latter would render to the Municipality of Humacao a faithful and true account of all receipts, fees, moneys, securities, and properties belonging to the Municipality of Humacao and delivered to him as such municipal secretary-auditor;"

(*c*) That, according to defendant's information and belief, the plaintiff requested the codefendant Jaime, who then acted as Secretary-Auditor of the Municipality of Humacao, to issue the certificates in questions as evidence of the sale of the goods by the plaintiff to the municipality which goods were received and used by the latter during the fiscal year 1936–37, and the said codefendant, who trusted the statements of the plaintiff, erroneously consented to issue the certificates as evidencing the indebtedness of the municipality to the plaintiff;

(*d*) That according to defendant's information and belief, the plaintiff knew that in the budget of the Municipality of Humacao for the fiscal year 1936–37 there was no appropriation justifying such issuance, and he knew, therefore, that according to law it was not entitled to collect for the

goods sold and consequently it had not been defrauded by the codefendant Jaime;

(e) That as the plaintiff had not asked for the proper order which, according to the accounting rules, must be issued on or before delivery of the goods, and as it had failed to ascertain whether there was in the budget any appropriation for said purchase, it had shown negligence;

(f) That, upon information and belief, it alleges that the co-defendant Jaime, either in his private capacity or as secretary-auditor, has not received any compensation, payment, or benefit whatsoever for the issuance of the certificates; and

(g) That, upon information and belief, it alleges that the goods were not received by the municipality.

Upon the above allegations the case went to trial. Oral and documentary evidence was heard and on March 29, 1940, the trial court gave judgment sustaining the complaint as to the first two causes of action and adjudging the defendants to pay jointly and severally to the plaintiff the sum of $559.25, with costs and $150 as attorney's fees.

Feeling aggrieved by that judgment, the defendants took the present appeal. They assign seven errors, claimed to have been committed by the court as follows: In holding that the plaintiff has legal existence; in not holding that the action brought is for damages and has prescribed; in considering as valid the credit certificates involved herein; in finding that the said certificates belong to the plaintiff; in holding that the bond was executed for the benefit of third persons; in concluding that the surety company is responsible for the illegal issuance of the certificates; and in rendering judgment for the plaintiff with costs and attorney's fees.

The assignments of error are separately and extensively argued pro and con in the briefs of the parties. We will not follow the same order. After full consideration of the case as a whole, it is our opinion that a reversal of the judgment lies, as the latter is not supported by the facts or the law.

168

■■■ We will not consider or determine the question of whether or not the plaintiff partnership existed at the time of the filing of the complaint, whether or not the action prosecuted is one of debt or for damages, whether or not the credit certificates had been endorsed by the plaintiff, and whether or not the bond in question was executed to the municipality and third persons or exclusively in favor of the municipality, but will confine ourselves to the responsibility incurred by the defendants by virtue of the issuance of the credit certificates involved herein.

At the trial the plaintiff waived the certificate on which the third cause of action was based. As regards the other two, No. 144 of $362.68 and No. 145 for $197.25, it is alleged in the complaint itself that they were issued by the defendant municipal secretary-auditor, with knowledge that there was no appropriation in the budget authorizing the issuance thereof under the law, and it was shown at the trial by the testimony of Antonio Ginorio Rosas, at present Secretary-Auditor of the Municipality of Humacao, who was called as a witness by the plaintiff itself, that the orders for materials which were attempted to be paid afterwards with the certificate, were issued at a time when they could not be issued, that is, when the amount appropriated in the budget had already been exhausted.

Upon being questioned by the judge, the witness textually answered: "According to this book, on the 1st of July there was entered on this book the budget where there appears an appropriation amounting to $250 and on the same day July 1st, there appears an entry in favor of Compañía Azucarera El Ejemplo of $584.53. So that on the very day that the appropriation was made the amount thereof was overdrawn by $234 and under the law no more entries could be made on the books."

In *Moscoso Hno. & Cia.* v. *Municipality,* 50 P.R.R. 181, where the plaintiff brought an action to recover from the

Municipality of Jayuya $1,057.79 as the value of certain drugs and medicines which it alleged to have sold to the municipality and in which there was introduced in evidence a certificate of indebtedness, similar to those herein issued by the defendant secretary-auditor, this court held:

"Aside from any question as to the probative value of such evidence, aside from any question as to the sufficiency of the testimony for plaintiff as to the total value of the supplies furnished the municipality or as to any part of such value and aside from numerous other questions discussed in the briefs, it will suffice to say that the alleged contract was *ultra vires* and void because at the time of the transaction no amount had been appropriated in the municipal budget for the purpose of meeting any such obligation. See subdivision 9 of Section 8 of the Municipal Law, Session Laws 1928, 338, 342. It follows that plaintiff could not recover either upon the theory of an express contract or upon the theory of an implied contract. *Municipality of Río Piedras* v. *Serra Garabis & Co.*, 65 Fed. (2d) 691, *Roberts* v. *City of Fargo*, 86 N. W. 726 (N. D.); *Hurley* v. *City of Trenton*, 49 Atl. 518; *Empire Voting Machine Co.* v. *City of Chicago*, 267 Fed. 162; *City of Litchfield* v. *Ballou*, 114 U. S. 190; *Hagerman* v. *Hagerman*, L.R.A. (1915 A) 904, 910; 44 Corpus Juris 136, Sec. 2247; 84 A.L.R. 936; 7 A.L.R. 361; 19 R.C.L. 1060–1066, Sec. 348–354; Dillon, on Municipal Corporations, vol. 1, page 549, Sec. 297.''

That being so, what effectiveness can be attached to the action of the defendant secretary-auditor in issuing the certificates on which the plaintiff based its action?

None whatever. The contract between the plaintiff and the municipality was void *ab initio* and the fact of the secretary-auditor issuing the credit certificates, in violation of the law and the truth, neither injured nor improved the plaintiff's situation.

The conclusion set forth in the complaint about the plaintiff having been defrauded by the defendants in the amount of the certificates has no basis to stand upon, for the certificates were worthless. They were based on the existence of

the debt. If the debt was nonexistent, the certificates must be without force.

Summing up, from the erroneous actions of the secretary-auditor in issuing the certificates and of the mayor in approving the same there arose no obligation to pay on the part of said officers or of the surety of the former, as claimed by the plaintiff and provided by the judgment. Therefore, said judgment must be reversed and the action dismissed, with costs and $150 as attorney's fees.