MANNING ENGINEERING, INC., PLAINTIFF-RESPONDENT
AND CROSS-APPELLANT, v. HUDSON COUNTY PARK
COMMISSION AND COUNTY OF HUDSON, DEFEND-
ANTS-APPELLANTS AND CROSS-RESPONDENTS.

Argued April 5, 1976—Decided September 16, 1976.

146

*Mr. Frank P. Morley* argued the cause for defendant County of Hudson (*Mr. Harold J. Ruvoldt, Jr.,* attorney).

*Mr. Michael F. X. Manning* argued the cause for plaintiff (*Messrs. Keith and Winters,* attorneys).

The opinion of the court was delivered by

Conford, P. J. A. D., Temporarily Assigned. Plaintiff brought this action on a contract for engineering services rendered the defendants and had a recovery of damages in the Superior Court, Law Division. On appeal by defendant

County of Hudson and cross-appeal (as to damages) by plaintiff the Appellate Division affirmed on the Law Division opinion. We granted petition for certification by defendant and cross-petition by plaintiff. 69 *N. J.* 75 (1975).

For more than a year prior to October 1965 the Hudson County Park Commission ("Commission") had been planning a proposed park development on the Hackensack River in Jersey City, with the expectation of federal financial aid. A report on the matter and an application to a federal agency for the purpose had been prepared by Hugh C. Clarke, consulting engineer to the Commission. The expenses and obligations of the Commission are defrayable by the county. *N. J. S. A.* 40:37–231, 233. In early 1965 the federal agency approved the application, and by resolution of May 26, 1965 the Park Commission approved the agreement therefor and recommended its approval by the county board of freeholders. Clarke's report reflected an estimated cost range of $3,700,000 to $4,009,800 for the entire project of which $3,486,000 was the proposed cost of construction.

In June 1965 the Commission adopted a resolution authorizing plaintiff to prepare preliminary plans and specifications and survey work for the project. Plaintiff immediately began work on the project. On October 13, 1965, the parties formally agreed by a detailed 12-page contract that plaintiff would perform services for the park project, which were to "include engineering design and supervision of construction of the Project as well as the preparation of preliminary and final plans required by the Housing and Home Finance Agency and the Park Commission in connection with the referenced Housing and Home Finance Agency Project P–NJ–3269." The contract was approved by a resolution of the Board of Chosen Freeholders of the County of Hudson on the same date, and the contract was signed on behalf of the board of freeholders by its director. Paragraph 3 of the resolution recites: "The cost for the work and services in connection with the aforesaid Project are [sic] to be defrayed out of Federal funds."

The work to be performed by the plaintiff as engineer was set forth in Part III of the contract and was divided under five basic headings entitled: A. "In General"; B. "Engineering Design"; C. "Nominal Supervision"; D. "Supervision of Construction"; and E. "Additional Work and Services". The specific duties subsumed under "Engineering Design" included the following: preparation of plans, specifications and cost estimates, the activities in connection with bidding (preparation of bidding documents, performance of professional consulting services related to advertising for and obtaining bids, provision of sets of specifications for bidding construction and record purposes, and having a representative attend and advise at bid openings); performance of all engineering services required for financing of the project; establishing boring locations; having representatives attend meetings of the Park Commission, assistance in obtaining field surveys; and preparation and revision of schedules of expenditures. "Nominal Supervision" included a variety of supervisory duties which were to be performed weekly or from time to time, such as submission of reports on request, approval of shop drawings and equipment, and periodic visitation to the site for checks on progress. "Supervision of Construction" involved daily coordination of construction work and on-site inspection.[1]

Provision for compensation under the contract was set forth in three separate parts: (1) Engineering Design and Nominal Supervision; (2) Supervision of Construction; and (3) Additional Work and Services, the latter covering any work and services not otherwise provided for or contemplated by the agreement "as ordered * * * by the Park Commission". "Engineering Design and Nominal Supervision" were to be computed on the basis of 7% of the "As-Built" cost of construction. "Supervision of Construction"

[1] Within the engineering profession, "Nominal Supervision" generally refers to bi-weekly or monthly inspection, according to the evidence.

was to be computed on the basis of an additional 3% of the "As-Built" cost of construction.

The contract also provided in respect of payment of fees for engineering design and supervision:

Part VB(1) * * *
(a) A total of 7% of 80% of the Engineer's Estimate of the probable cost of each construction contract will be due in 3 stages as follows:
(1) In an amount equal to the funds received from the Federal Government payable when and as said funds are received for the preliminary Plans for Project P–NJ–3269;
(2) In an amount equal to the funds received from the Federal Government of final plans of Project P–NJ–3269; (3) The final balance of 7% of 80% of the Engineer's Estimate of the probable cost of each construction contract when such funds are appropriated by the County.
(b) Seven (7%) of eighty (80%) of the amount of the bid of the successful bidders at the time of the award of each construction contract, less amounts previously paid.
(c) The balance necessary to bring the payments to a full seven (7%) of the As-Built cost of construction in a series of payments based on Contractor's actual performance. Final payment, seven (7%) per cent of the As-Built cost of construction, shall be paid to the Engineer within thirty (30) days after completion of the work under the contract as certified by the Engineer.

The 3% of construction cost was to be paid in a series of monthly installments based upon the cost of the contractor's actual performance.

Frank G. Manning, head of the plaintiff corporation, testified that between October 13, 1965, the date of the contract, and the end of January 1966, he performed "the major part of the work on the preliminary plans" and also some work on the final plans and specifications. These were submitted to the Board of Chosen Freeholders and the Park Commission on March 4, 1966. Along with the preliminary plans and specifications plaintiff submitted a bill in the amount of $46,122. On the face of the bill, it is stated: "[For p] rofessional services in preparation of preliminary report and plans for Project P–NJ–3269, Lincoln Park, Jersey City, N. J."

Plaintiff's report presenting the preliminary plans and specifications also contained an upgraded project cost esti-

mate of $5,569,130, which was reflected in a letter dated February 17, 1966 from the Board of Freeholders to the federal government. In explanation of the discrepancy between this figure and Clarke's original estimate, Manning stated that Clarke had been able to give only a "ball park figure" because he did not have borings, surveys or an accurate design before him until he received plaintiff's comprehensive design.

At the time of the Manning-Hudson contract in October 1965 there was no county capital budget provision for the park project. In September 1966, however, a capital budget for 1967 was introduced and adopted at a meeting of the Board of Freeholders projecting anticipated capital expenditures through the year 1972 and including the item "Park Development and Improvement", $6,404,500. The project was to be financed by capital improvement funds of $154.500, grants and aids in the sum of $3,200,000, and general loans of $3,050,000. No actual capital appropriation appears to have been made, however, for 1966, 1967 or 1968. Manning was not aware, at the date of the contract, that neither the Park Commission nor the Board of Freeholders had budgeted or appropriated any money for the planned project.

Final plans and specifications were completed on December 26, 1967, and these were also submitted to the Park Commission and the federal government. Plaintiff did not perform some of the categories of work listed under "B. Engineering Design" in the contract. Manning testified that he did not perform consulting services in connection with advertising for bids, and, since there was no bidding, he obviously did not furnish a representative to attend bid openings. He did, however, prepare the bid documents. Plaintiff performed none of the services listed either under "C. Nominal Supervision" or "D. Supervision of Construction." Manning stated, rather, that he did all the work up to the point of getting ready to bid.

With the final plans and specifications, plaintiff submitted a voucher for $92,243. This voucher states: "[For c]omplete construction plans and specifications for developing * * * approximately 150 acres park lands * * * pursuant to agreement for advance for public works planning, Federal Housing and Home Financing Agency, Project P–NJ–3269, Lincoln Park, Jersey City, New Jersey." After some delay, both this and the $46,122 bill for preliminary plans were paid, so that plaintiff received a total of $138,365.

The total amount of the two bills submitted by plaintiff was exactly the same as the amount allowed by the federal government. Manning testified that the discrepancy between the amount of $138,365 and the amount due under the contract for the same work (see below) was the result of various factors: that the "scope" of his work was a "different grade" from that called for by the federal project, including preparation of an alternate plan for a golf course required by the Commission but not part of the federal project; that the federal government "took the absolute minimum fee which would be determined for simple design and gave that as aid in getting work on the project"; and that the county's contract with the federal government was wholly distinct from the county's contract with his company.

During the spring and summer of 1968 Manning did not hear from the Park Commission. In August 1968 he became aware that the Recreation Authority had hired another engineer to build a golf course at the same site to which his contract referred. Thereupon, plaintiff submitted to the Hudson County Park Commission a bill "[For] Professional services rendered including complete final stage construction plans and specifications for development of approximately 150 acres of park land * * * pursuant to contract and Hudson County Park Commission Resolution of October 13, 1965." Opposite "Total Fees Due Pursuant to Contract" is entered the figure "$390,259.10". Next to "Partial Payments to Date per U. S. Housing & Home Finance" is the figure

"$138,365.00". The "Balance Due for Final Plans and Specifications" is "$251,894.10".

The amount of $390,259.10 represented 7% of estimated construction costs plus $6000 for boring. No allowance was made in this computation for the fact that plaintiff had not performed part of the bidding work and the "nominal supervision" which were to be included in the 7% of cost fixed therefor by the contract. The project in question was never constructed.

Both Manning and Clarke testified at the trial regarding the engineering profession's customary methods of computing and allocating fees when the services contracted for are not completed. The *Manual of Information on Consulting Services and Fees* of the New Jersey Society of Professional Engineers, which was admitted into evidence, provides that: "The Engineer's estimate of the 'cost of the work' shall be the basis for computing fees for each stage of his completed or partially completed services if *bona fide* bids for the work have not been received or if for any reason the work is not started or completed." The manual sets forth a list of typical services and percentages of basic minimum fees in relation to work completed. According to the manual, upon completion of working drawings and specifications, a sum sufficient to bring payments to 70% to 80% of the basic fee is to be paid. Manning testified that in a contract involving only design services and nominal supervision, there is generally a 20% fee reduction if the supervision is not performed. According to Clarke, the deduction in such cases is normally 25%.

Upholding the validity of the Manning-Hudson contract, Judge Larner, sitting without a jury in the Law Division, rendered judgment against the Park Commission and the County of Hudson in the sum of $134,522.37. The judge ruled that if all work required under the contract up to "Supervision of Construction" had been performed, plaintiff would have been entitled to 7% of the contract price. He found, however, that none of the "Nominal Supervision", and not all of the "Engineering Design" work covered by

the 7% of cost formula in the contract had been completed. He held that the contract was divisible, and that the proper formula for computing damages was the percentage of the contemplated work actually performed multiplied by 7% of total contract fees. That percentage was set at 70%. In so finding, the court said:

From the totality of the evidence including the figures suggested by the testimony of Dr. Clarke, the court concludes that a fair and reasonable basis for computing the damages would be 70% of the 7% contract fee. This is a reasonable, though not mathematically accurate, estimate of the ratio of completed services to the services required by the contract within the contemplated fee of 7%.

Application of this percentage (4.9% of cost) to $5,569,130.00, Manning's estimated cost figure, yielded $272,887.37. When the amount already paid to Manning, $138,365, was subtracted from this figure, the resulting remainder was $134,522.37. Judgment was consequently entered against the county for that amount, plus 6% interest from September 30, 1971, when a voucher for plaintiff's claim had been filed with the county.

I

One of the county's principal contentions is that the contract with plaintiff is null and void to the extent that the services contracted for go beyond the preparation of preliminary plans and specifications for the project. Its reliance is upon *N. J. S. A.* 40A:4-44, which reads:

The local government board shall adopt, and may from time to time amend, reasonable rules and regulations for capital budgets. Regulations may classify the type of budget required, according to the size of the local unit, the nature of the capital projects or any other reasonable basis of distinction, and shall require a statement of capital undertakings underway or projected for a period not greater than over the next ensuing 6 years as a general improvement program.
After promulgation of regulations by the local government board, the governing body shall expend or incur obligations for capital pur-

poses *only after* the adoption of a capital budget and in accordance with such budget *except for the preliminary expense of plans, specifications and estimates.* (emphasis supplied).

The county points out that the Manning contract pertained to "capital purposes" and that no capital budget inclusive thereof was adopted prior to the making of the contract in October 1965.

■ The purpose of this and similar fiscal control statutes, see *N. J. S. A.* 40A:4–57, is to prevent hasty, ill-considered or undisclosed public expenditures. See *Slurzberg v. Bayonne,* 29 *N. J.* 106, 114, 115 (1959); *State v. Boncelet,* 107 *N. J. Super.* 444, 450 (App. Div. 1969). Plaintiff responds that the services for which it sues are comprehended within the exception contained in the statute identified by emphasis in the quoted excerpt above. It argues that all plans and specifications, final as well as preliminary, are comprehended by the exception. The county disputes this, urging that the statutory language was intended and should be read as though "preliminary" preceded the words "plans, specifications and estimates" and that only preliminary plans and specifications are excepted.

■ Consideration of the purpose and object of the exception leads us to concurrence with the position of the plaintiff on the point. One obvious purpose of the exception is to provide the governmental body with a reliable estimate of the total cost of the project for use in fixing the amount of the capital budget required to be adopted prior to contracting or issuing bonds for the work of construction itself. As exemplified by the facts before us, final plans and specifications often may well justify a project cost estimate substantially larger than that reflected by preliminary plans. We thus conclude that the literal import of the statutory exception is the authoritative one and that the word "preliminary" describes only "expense", not "plans, specifications and estimates."

The county does not argue that, if the foregoing conclusion be accepted, the valid portion of the plaintiff's contract

is not severable from that portion exceptionable under *N. J. S. A.* 40A:4–44. In any event, we see no problem in that regard. The valid portion of the contract is clearly severable. See *Bauer v. City of Newark*, 7 *N. J.* 426, 435 (1951).

Since plaintiff does not contend that it should be compensated for any of the contracted work which it did not perform, and since the work it did perform is substantially encompassed by its preparation of preliminary and final plans, specifications and estimates, the issue presented is adequately dealt with by our holding that the recovery had by plaintiff below does not offend anything contained in *N. J. S. A.* 40A:4–44.

## II

The county argues that the effect of the resolution by which it approved the October 1965 contract was to limit its liability thereon to the funds advanced by the federal agency. Its reliance is on the resolution language: "the cost for the work and services in connection with the aforesaid project [is] to be defrayed out of federal funds". However, the plaintiff's rights are to be derived from the contract which the parties signed, not from the resolution, whose only function was to authorize the contract. If the contract were ambiguous on the point the resolution might possibly be held relevant for constructional background. But, as the opinion of the trial judge makes clear, the contract affirmatively demonstrates that the county's liability to plaintiff is not circumscribed by funds it receives from the federal agency as the schedule of payments to plaintiff in the contract expressly adverts to liability for the "balance" of the amount due plaintiff over and above the amount received from the federal government for preliminary plans and final plans.

The operative portion of the resolution in question expressly ratifies and affirms the written contract "in the form presented at this meeting". That language is positive and un-

ambiguous and fixes the liability of the county by its terms. The sentence from the resolution relied upon by the county, in the light of the foregoing observation, can be read only as an extraneous statement of expectation by the county as to source of the funds, not a contractual stipulation or limitation of the general authority of the county to enter into the contract as drawn.

The contention is thus without merit.

### III

The county contends the contract became null and void by reason of Mr. Manning's conflict of interest after he became county counsel on January 20, 1966. However, no solid factual basis for any showing of conflict of interest is made by the county. Certainly when the contract was entered into in October 1965 Manning had no relationship with the county whatever. Insofar as concerns full and faithful performance of the contract by plaintiff after Manning became county engineer, it is obvious that there was a possibility of public suspicion that there might be less than punctilious exaction by the county of its rights and plaintiff's obligations in that regard. To that extent the public interest, arguably, would have been better served if Manning withdrew either from the contract or the public position. But we cannot conclude that this circumstance alone is tantamount to an invalidating conflict of interest.

At all times here involved the Park Commission, which was relied upon by the county with respect to this project, was served by an independent consulting engineer, Mr. Clarke. Manning testified that the Board of Freeholders never called upon him for advice in relation to this project although, as consulting engineer, he did confer with the director of the Board of Freeholders concerning the need to request of the federal agency an additional $6,000 advance for borings. He also stated that it was not a part of his duties as county engineer to review the work of independent en-

gineers doing work either for the county or for any agency thereof. Manning did occasionally consult with the Park Commission, but this was only in his capacity as consulting engineer on the park project.

We see nothing in this fact complex to invoke the principle that a public officer may not participate in the award of a contract or take official action in respect thereof where he has an actual or potential interest in the subject matter. *Driscoll v. Burlington Bristol Bridge Co.*, 8 *N. J.* 433, 474–475 (1952) *cert.* den. 344 *U. S.* 838, 73 *S. Ct.* 25, 33, 34, 97 *L. Ed.* 652 (1952) ; *Pyatt v. Mayor and Council of Dunellen,* 9 *N. J.* 548 (1952) ; *Pressey v. Hillsborough Tp.,* 37 *N. J. Super.* 486, 491 (App. Div. 1955), certif. den. 20 *N. J.* 303 (1956). Manning obviously could not, as county engineer, have been instrumental in the award of this contract to his firm nor was he under an obligation as county engineer to review, pass upon or report to the Board of Freeholders concerning his work as contracting engineer to the Park Commission.

The county makes a special point of the fact that plaintiff's original report to the county and the Park Commission, containing a $5,569,130 cost estimate for the project, was rendered after his appointment as county engineer. It is stressed that this estimate substantially exceeded that made the year before by Mr. Clarke, and that plaintiff stood to benefit in his fees from any increase in the project cost. However, the latter circumstance would obtain in the case of any consulting engineer engaged, as is customary, on a fee basis related to cost, whether or not the engineer had any other relationship to the county. It was plaintiff's obligation to report a realistic estimate of cost, and there is no evidence in the case whatever that the instant estimate was incorrect or inflated. The fact that Manning became county engineer pending the coming in of plaintiff's report is not shown to be anything but an irrelevant coincidence.

There was no invalidating conflict of interest. *Cf. Van Itallie v. Franklin Lakes,* 28 *N. J.* 258, 268 (1958).

## IV

■ Plaintiff asserts that the trial court erred in assigning "Nominal Supervision" to that portion of the contract services to be compensated at 7% of cost rather than to supervision of construction, which was compensable at 3% of cost. The argument is that "Nominal Supervision" is "integrated" into day-to-day supervision. In concluding to the contrary the trial judge included nominal supervision in that portion of the undone work for which the judge reduced plaintiff's compensation at a 7% of cost rate rather than a 3% rate. The short answer to the argument is that the written contract expressly provides that the services to be compensated at 7% of the cost of construction include "For Engineering Design and Nominal Supervision". Article V, A.1. This was neither alleged nor proven to be a mistake. It is therefore controlling.

## V

■■ Both sides complain concerning the allowance of interest. The county urges that since there was a substantial dispute as to the amount, if any, due plaintiff, no interest should have been awarded. Plaintiff argues that interest should have been allowed from the date of the breach constituted by the county's refusal to pay anything on account of the plaintiff's bill when rendered in August 1968. The allowance of pre-judgment interest in a contract action is largely dependent upon the application of principles of equity. *Bak-A-Lum Corp. v. Alcoa Building Prod.*, 69 *N. J.* 123, 131 (1976). Under all the circumstances here obtaining, including the excessiveness of plaintiff's original claim, the debatability of the points raised by defendant and the unliquidated nature of the claim allowed, we conclude no interest should have been awarded. The judgment is modified to delete interest. See *Passaic Val. Sewerage Com. v. City of Paterson,* 107 *N. J. Super.* 436, 441–442 (Law Div. 1969), aff'd 113 *N. J. Super.* 148, 150 (App. Div. 1971);

*Jardine Estates v. Donna Brook Corp.*, 42 *N. J. Super.* 332, 340–341 (App. Div. 1956).

Judgment modified, and affirmed as modified; no costs.

*For affirmance as modified*—Chief Justice HUGHES, Justices MOUNTAIN, PASHMAN, CLIFFORD and SCHREIBER and Judge CONFORD—6.

*For reversal*—None.