287 N.J. Super. 450 (1996)
671 A.2d 203
SQUARE BRIGHTON CORPORATION, INC., A NEW JERSEY CORPORATION, AND FLOYD JAMES, A TAXPAYER OF ATLANTIC CITY, PLAINTIFFS-APPELLANTS,
v.
THE CITY OF ATLANTIC CITY, A MUNICIPAL CORPORATION AND BODY POLITIC OF THE STATE OF NEW JERSEY, GREATE BAY HOTEL AND CASINO, INC. T/A "SANDS HOTEL & CASINO", A NEW JERSEY CORPORATION, CYNWYD INVESTMENTS, AND BOARDWALK REGENCY CORPORATION, A NEW JERSEY CORPORATION, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued January 23, 1996.
Decided February 22, 1996.
*451 Before Judges MICHELS, VILLANUEVA and KIMMELMAN.
Edward N. FitzPatrick argued the cause for appellants Square Brighton Corporation, Inc. and Floyd James (DeCotiis, FitzPatrick & Gluck and McGahn & Friss, attorneys; Mr. FitzPatrick and Patrick T. McGahn, Jr., of counsel; Mr. FitzPatrick, Mr. McGahn and Agnes I. Rymer, on the brief).
Daniel A. Corey, argued the cause for respondent The City of Atlantic City (Mr. Corey, City Solicitor, attorney; Mr. Corey, of counsel; Mr. Corey and John M. Eccles, Jr., on the brief).
Stephen R. Nehmad argued the cause for respondent Greate Bay Hotel and Casino, Inc., t/a "Sands Hotel & Casino" (Perskie & Nehmad, attorneys; Mr. Nehmad, of counsel; Mr. Nehmad and Richard F. DeLucry, on the brief).
*452 No brief or appearance was filed on behalf of respondents CYNWYD Investments and Broadwalk Regency Corporation.
The opinion of the court was delivered by MICHELS, P.J.A.D.
Plaintiffs Square Brighton Corporation, Inc. (Square) and Floyd James (James) appeal from a summary judgment of the Law Division entered in favor of defendants The City of Atlantic City (Atlantic City), Greate Bay Hotel and Casino, Inc., t/a "Sands Hotel & Casino" (Sands), CYNWYD Investments (CYNWYD) and Boardwalk Regency Corporation (Boardwalk) that declared Atlantic City Ordinance No. 61 of 1994 valid and enforceable.
The facts giving rise to this appeal are not disputed. For approximately 10 years, until July 1992, Sands leased from Square a sixteen-foot strip of land (the strip), which was used as part of a public thoroughfare, commonly referred to as Pop Lloyd Boulevard running between Dr. Martin Luther King, Jr., Boulevard and Indiana Avenue in Atlantic City, New Jersey. CYNWYD owns the fee interest in the site upon which the strip is located. Boardwalk leased this site from CYNWYD for ninety-nine years and subleased the site to Square. Sands, which had exclusive possession and control of the strip pursuant to license agreements, used it as a bus lane, a bus depot and to access its loading dock.
Sometime in 1991, rather than renewing the lease with Square, Sands instituted suit against Atlantic City to compel it to acquire the strip. The suit was settled. Under the terms of the Stipulation of Settlement executed by Atlantic City and Sands, Atlantic City agreed to "promptly, without delay and as expeditiously as possible" acquire the strip. The Stipulation of Settlement provided that "Sands shall pay one-hundred percent of the fair market value `compensation' (as defined by N.J.S.A. 20:3-2) plus all associated costs to be paid by the City to acquire the Street." Additionally, the Stipulation of Settlement provided that "Sands shall pay one-hundred percent of all sums, if any, regardless of how described, adjudicated by the court in this matter to be due to *453 [Square] from the City for the use of the Street between August 1, 1992 and the time it is acquired by the City."
In August 1994, the Atlantic City Municipal Council adopted Ordinance No. 61, which was approved by the Mayor in September 1994. Ordinance No. 61, in pertinent part, reads:
SECTION 1. The City of Atlantic City (the "City") shall promptly, without delay and expeditiously take any and all actions necessary, appropriate and legally required to acquire, for public right-of-way purposes, the southerly 16-foot strip of what is now commonly referred to as Pop Lloyd Boulevard, running between Dr. Martin Luther King, Jr., Boulevard and Indiana Avenue (the "Street"), having dimensions of approximately 16 feet by 350.75 feet and shown as the diagonally-stripped area on Exhibit "B" to this Ordinance. The City shall comply with all applicable laws, including without limitation the provisions of N.J.S.A. 40A:12-1, et seq. (the Local Lands and Buildings Law) and N.J.S.A. 20:3-1, et seq. (the Eminent Domain Act). If the City is unable to acquire the Street by consent in an arm's length bona fide transaction, then it shall acquire the Street by eminent domain. Greate Bay Hotel and Casino Inc., t/a Sands Hotel & Casino ("Sands") is to pay one-hundred percent of the fair market value "compensation" and one-hundred percent of all sums, if any, regardless of how described, due to Square Brighton Corporation ("Square") from the City for the use of the Street between August 1, 1992, and the time it is acquired by the City, all as more particularly set forth in the Stipulation attached as Exhibit "A".
* * * * * * * *
SECTION 3. Pursuant to the terms of the Stipulation, all funds for the acquisition and all funds due Square from the City for use of the Street shall be provided by Sands and therefore no certification of funds is required.
In September 1994, Square and James, a taxpayer and an employee of Square, instituted this action by a Complaint in Lieu of Prerogative Writs against Atlantic City, Sands, CYNWYD and Boardwalk, seeking (1) a declaration that Ordinance No. 61 and the Stipulation of Settlement between Atlantic City and Sands were null and void; and (2) an injunction enjoining Atlantic City from taking any steps to implement Ordinance No. 61 or the Stipulation of Settlement. Plaintiffs also sought compensatory damages, interest, costs and counsel fees. Plaintiffs claimed that (1) Ordinance No. 61 violated N.J.S.A. 40A:4-57, a provision of the Local Budget Law, because the ordinance purported to incur public liability, and to enter into a contract which involved an expenditure of money, for which no appropriation had been made; *454 and (2) the Stipulation of Settlement independently violated the Local Budget Law because it involved expenditures of money for which no appropriation had been made.
After issue was joined, the trial court on cross-motions for summary judgment, held that Ordinance No. 61 did not violate the Local Budget Law and was valid and enforceable. Judge Weinstein in the Law Division, in part, reasoned:
There are two reasons why I believe this statute has not been violated: Firstly, by its terms, realistic terms, and the direction of this Court in its ruling in the prior case that the acquisition was to take place by March of 1995 did not direct, did not require, did not anticipate payments by the City during fiscal 1994, and so, if it is necessary, the budgetary process is open for inclusion of any expenditure before an expenditure of funds in 1995 will take place. Moreover, the fact that the stipulation, the settlement agreement incorporated in the ordinance, imposed the responsibility on the part of the Sands to pay could have allowed the City in my opinion to avoid having to go through the process that [counsel] has indicated would be followed here by having the Sands pay directly to the owner of the parcel the amount of the condemnation award or the agreement, agreed price, if there is an agreement for acquisition, and to pay directly any other costs that may be incurred. The agreement and the ordinance does not require reimbursement by the Sands, it requires payment by the Sands of all attendant costs of acquiring the property.
Under those circumstances either or both of the reasons I have given, I am satisfied that in this limited context of the acquisition of this property as part of a settlement of a lawsuit, all costs of which [are] to be borne by a taxpayer individually and not the City or the public, is not violative of the ordinance  of the statute, and, therefore, I uphold the validity of this ordinance and grant summary judgment to the defendants.
On appeal, plaintiffs now seek a reversal of the summary judgment and the entry of judgment in their favor, contending that Atlantic City Ordinance No. 61 violates the Local Budget Law and that the open-ended exception created by the trial court is unauthorized by the Local Budget Law. We disagree and affirm.
We are satisfied from our review of the record and the arguments presented that the trial court properly concluded that Ordinance No. 61 did not violate the Local Budget Law. Moreover, we are convinced that summary judgment was properly granted in favor of defendants whether the matter is viewed traditionally under Judson v. Peoples Bank & Trust Co., 17 N.J. 67, 110 A.2d 24 (1954), or under the standard more recently *455 announced in Brill v. Guardian Life Insurance Co. of America, 142 N.J. 520, 666 A.2d 146 (1995), and that all issues of law raised are clearly without merit. R. 2:11-3(e)(1)(E). Accordingly, the summary judgment under review is affirmed substantially for the reasons expressed by Judge Weinstein in his thoughtful oral opinion of November 17, 1994.
We write further simply to emphasize that Ordinance No. 61 does not violate the Local Budget Law because Atlantic City was not obligated to expend any of its funds or incur any liability in connection with the acquisition of the strip. The Local Budget Law, which is codified at N.J.S.A. 40A:4-2 to -88, in pertinent part, provides:
No officer, board, body or commission shall, during any fiscal year, expend any money (except to pay notes, bonds or interest thereon), incur any liability, or enter into any contract which by its terms involves the expenditure of money for any purpose for which no appropriation is provided, or in excess of the amount appropriated for such purpose.
Any contract made in violation hereof shall be null and void, and no moneys shall be paid thereon. [N.J.S.A. 40A:4-57.]
In construing and interpreting statutes, including the Local Budget Law, our courts have consistently favored an approach which focuses upon the purpose of the statute rather than one which interprets it literally through strict adherence to its wording. Thus, in Jersey City Chapter of Property Owner's Protective Ass'n v. City Council, 55 N.J. 86, 100, 259 A.2d 698 (1969), the Supreme Court emphasized that:
When all is said and done, the matter of statutory construction ... will not justly turn on literalisms, technisms or the so-called formal rules of interpretation; it will justly turn on the breadth of the objectives of the legislation and the commonsence of the situation.
Similarly, in Suter v. San Angelo Foundry & Machine Co., 81 N.J. 150, 160, 406 A.2d 140 (1979), the Court stressed that "statutes are to be read sensibly, the purpose and reason for the legislation controlling, rather than construed literally." "In reading and interpreting a statute, primary regard must be given to the fundamental purpose for which the legislation was enacted." N.J. Builders, Owners and Managers Ass'n v. Blair, 60 N.J. 330, *456 338, 288 A.2d 855 (1972). Further, it is well settled that "[w]here a literal rendering [of a statute] will lead to a result not in accord with the essential purpose and design of the act, the spirit of the law will control the letter." Reisman v. Great Am. Recreation, Inc., 266 N.J. Super. 87, 95, 628 A.2d 801 (App.Div.) (quoting N.J. Builders, Owners and Managers Ass'n v. Blair, supra, 60 N.J. at 338, 288 A.2d 855), certif. denied, 134 N.J. 560, 636 A.2d 519 (1993); see Midlantic Nat. Bank v. Peerless Ins. Co., 253 N.J. Super. 137, 142, 601 A.2d 243 (App.Div. 1992); State v. Levine, 253 N.J. Super. 149, 160, 601 A.2d 249 (App.Div. 1992); Wharton v. Howard S. Straub, Inc., 235 N.J. Super. 179, 189, 561 A.2d 1169 (App.Div. 1989); Galanter v. Planning Bd. of Howell Tp., 211 N.J. Super. 218, 221, 511 A.2d 702 (App.Div. 1986); Cressey v. Campus Chefs, Div. of CVI Serv., Inc., 204 N.J. Super. 337, 342-43, 498 A.2d 1274 (App.Div. 1985); see also Dvorkin v. Dover Tp., 29 N.J. 303, 315, 148 A.2d 793 (1959); Schierstead v. City of Brigantine, 29 N.J. 220, 230-31, 148 A.2d 591 (1959). "In searching for the true understanding and proper application of a statute, its internal sense should control the meaning to be ascribed to its literal terms; the statutory language must be read perceptively and sensibly with a view toward fulfilling the legislative intent." Unemployed-Employed Council of N.J., Inc. v. Horn, 85 N.J. 646, 654-55, 428 A.2d 1305 (1981). Indeed, in Essex County Board of Taxation v. City of Newark, 73 N.J. 69, 74, 372 A.2d 607 (1977), the Court, in considering the impact of N.J.S.A. 40A:4-57 upon a contract, approved an approach which focused upon the purpose behind that statute rather than upon its strict wording.
It is clear that the purpose of the Local Budget Law is "to require such fiscal control as will prevent irresponsible, ill-considered or undisclosed public expenditures and as well prohibit deficit financing by municipalities." Mount Laurel Tp. v. Local Fin. Bd. of Dep't of Community Affairs, 166 N.J. Super. 254, 257, 399 A.2d 982 (App.Div. 1978), aff'd, 79 N.J. 397, 399 A.2d 980 (1979); see Manning Eng'g, Inc. v. Hudson County Park Comm'n, 71 N.J. 145, 155, 364 A.2d 1 (1976), judgment vacated, 74 N.J. 113, 376 *457 A.2d 1194 (1977); Passaic v. Local Finance Bd. of Dep't of Community Affairs, 88 N.J. 293, 302, 441 A.2d 736 (1982); Morris County v. Skokowski, 86 N.J. 419, 423, 432 A.2d 31 (1981); H.P. Higgs Co., Inc. v. Madison, 188 N.J. Super. 212, 226, 457 A.2d 43 (App.Div.), certif. denied, 94 N.J. 535, 468 A.2d 188 (1983); see also State v. Boncelet, 107 N.J. Super. 444, 449-50, 258 A.2d 894 (App.Div. 1969); Kotlikoff v. Pennsauken Tp., 131 N.J. Super. 590, 595, 331 A.2d 42 (Law Div. 1974). The purpose of the Local Budget Law is to promote fiscal responsibility on the part of the municipalities of this State, and Ordinance No. 61 does not frustrate that purpose.
Hurley v. City of Trenton, 66 N.J.L. 538, 49 A. 518 (Sup.Ct. 1901), aff'd, 67 N.J.L. 350, 51 A. 1109 (E. & A. 1902) and Mount Laurel Township v. Local Finance Board of Department of Community Affairs, supra, 166 N.J. Super. at 257, 399 A.2d 982, relied upon by plaintiffs, are distinguishable and do not compel a contrary conclusion. In Hurley, supra, 66 N.J.L. at 538, 49 A. 518, a taxpayer sought to set aside a contract of the City Council of Trenton that was awarded to a certain paving company to repave two Trenton streets. The "repaving for which the contract here sought to be set aside was made[,] was provided for by an ordinance of the city council[.]" Id. at 540, 49 A. 518. It was established that "no bonds had been issued to meet the expenses of the improvement contemplated by the contract, and that no money is on hand or available now to meet the expenses incurred, or to be incurred, in the making of the improvement." Id. at 539, 49 A. 518. The plaintiff argued that "no fund exists out of which to pay the costs and expenses incurred by the contract[,]" and thus the ordinance should be deemed invalid. Id. at 539, 49 A. 518. The Court held that "a contract to incur an obligation or indebtedness in excess of existing appropriations for the purposes for which the contract is made is illegal." Id. at 539, 49 A. 518.
In Mount Laurel Township, supra, 166 N.J. Super. at 255, 399 A.2d 982, we affirmed a determination of a Local Finance Board disapproving an emergency ordinance appropriating funds for the *458 payment of legal expenses incurred by Mount Laurel Township for a trial in which the Township was a party. Relying largely upon N.J.S.A. 40A:4-57, we affirmed the Local Finance Board's disapproval of the ordinance "because it was adopted after the unappropriated liability had been contracted for and actually incurred, a time sequence in violation of the cited statutory provisions." Id. at 257, 399 A.2d 982.
Unlike the facts in both Hurley, supra, and Mount Laurel Township, supra, Atlantic City did not enter into a contract or adopt an ordinance which would require it to expend public funds. Rather, the funds that were to be expended pursuant to the Stipulation of Settlement were those of a private party. Pursuant to the Stipulation of Settlement, Sands agreed to give Atlantic City the acquisition funds, conditioned only upon Atlantic City using the funds to purchase the property in question as a public right-of-way. Atlantic City, as any municipality, is permitted to accept such a conditional gift pursuant to N.J.S.A. 40A:5-29, which states:
Any local unit is authorized and empowered to accept bequests, legacies and gifts made to it and is empowered to utilize such bequests, legacies and gifts in the manner set forth in the conditions of the bequest, legacy or gift, provided, however, that such bequest, legacy or gift shall not be put to any use which is inconsistent with the laws of this State and of the United States.
Moreover, in both Hurley, supra, and Mount Laurel Tp., supra, uncertainty existed, following the adoption of the respective ordinances, as to the potential source of municipal funds necessary to fulfill the municipalities' obligations under these ordinances. Thus, both municipalities could be said to have acted in a fiscally irresponsible manner. Here, the source of the funds needed to acquire the strip was not only known, but actually assured by the terms of the Stipulation of Settlement. As pointed out above, the Stipulation of Settlement provided that "Sands shall pay one-hundred percent of the fair market value `compensation' ... plus all associated costs to be paid by the City to acquire the Street." In light of this agreement, the purpose of the Local Budget Law cannot be said to be frustrated by Ordinance No. 61. Furthermore, *459 the actions taken by Atlantic City in enacting Ordinance No. 61 cannot be considered "irresponsible, ill-considered or undisclosed public expenditures[,]" Mount Laurel Tp., supra, 166 N.J. Super. at 257, 399 A.2d 982, nor do they frustrate the purposes of the Local Budget Law.
Affirmed.